DAVIS, KESSLER & DAVIS
Norris A. Kessler, III, Esq. (B.P.R. #022152)
nickkessler@hotmail.com
Andy Peters Davis, Esq. (B.P.R. #024386)
andypetersdavis@gmail.com
705 Dinah Shore Boulevard
Winchester, TN
Telephone: (931) 967-7000
Facsimile: (931) 968-0680

KAZEROUNI LAW GROUP, APC
Abbas Kazerounian, Esq. (SBN: 249203)
*Pro Hac Vice*
ak@kazlg.com
Matthew M. Loker, Esq. (SBN 279939)
*Pro Hac Vice*
ml@kazlg.com
2700 N. Main Street, Ste. 1000
Santa Ana, California 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[ADDITIONAL COUNSEL FOR PLAINTIFF ON SIGNATORY PAGE]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ERIN MOCK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>VIACOM, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

///

# INTRODUCTION

1. ERIN MOCK ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of VIACOM, INC. ("Defendant"), in negligently contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2. The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Id. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on

TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act ... is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

7. Venue is proper in the United States District Court for the Middle District of Tennessee pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Defendant is subject to personal jurisdiction in the County of Davidson, State of Tennessee.

## PARTIES

8. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Tennessee. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

9. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein was, a corporation whose State of

Incorporation and principal place of business is in the State of Delaware. Defendant, is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (10). Defendant is a mass media company that operates approximately 170 networks for cinema and cable television. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of Tennessee and in the County of Davidson, and within this judicial district.

## FACTUAL ALLEGATIONS

10. At all times relevant, Plaintiff was a citizen of the County of Davidson in the State of Tennessee. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

11. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153 (10).

12. At all times relevant Defendant conducted business in the State of Tennessee and in the County of Davidson, within this judicial district.

13. At no time did Plaintiff ever enter in a business relationship with Defendant. Defendant at all times was messaging Plaintiff to advertise Defendant's upcoming television programs.

14. At no time did Plaintiff expressly consent to receive such messages from Defendant.

15. On or about August 28, 2011, Plaintiff was watching the Video Music Awards ("VMAs") program on the cable television channel, Music Television ("MTV").

16. At all relevant times Defendant owns and operates MTV.

17. At some point during the 2011 MTV VMAs, Defendant solicited its viewers to vote via text messaging for their favorite nominees and the like. At no point during this solicitation, did Defendant advise its viewers, including Plaintiff, that by voting, they would be consenting to receipt of future text

SPAM advertisements from Defendant and/or its subsidiaries and/or employees and/or agents.

18. At some point during the VMAs, Plaintiff sent a text message to Defendant, phone number 663-33, to cast a vote as solicited by Defendant.

19. Immediately thereafter, and without Plaintiff's consent, Defendant sent a text message that stated:

> **"Verizon & MTV thank you for voting! Watch the VMAs to see who wins! STOP2quit/HELP4info. Msg&Data Rates May Apply."** [A true and correct copy of said August 28, 2011 text message is attached hereto as Exhibit A].

20. On or about September 15, 2011, Plaintiff received another unsolicited SPAM text message from the 663-33 number attributed to Defendant. This text message stated:

> **"MTV: 'Jersey Shore' sneak peek of tonight's episode- why is Snooki lying in a bush? Watch: http://mm.mtv.com/nrlU2T *LG Txtr Game- Txt Win to 28683 to Play"** [See Exhibit A].

21. Subsequently, on or about September 24, 2011, Plaintiff received a third SPAM unsolicited text message from the same 663-33 number that is attributed to Defendant that stated:

> **"MTV: 'Real World San Diego' premieres Wednesday, Sept 28 at 10/9c! Get to know the cast here http://mm.mtv.com/pFh1UF."** [A true and correct copy of said September 24, 2011 text message is attached as Exhibit B].

22. Plaintiff then sent a text message to Defendant saying "STOP" in order to end the unsolicited messages. [See Exhibit B].

23. Thereafter, Defendant sent a confirmatory text message to Plaintiff which stated:

> "MTV: Sorry to see you go. You will receive no more messages or charges from MTV. For more info reply HELP, call 866-375-2127, or email textalerts@mtv.com." [See Exhibit B].

24. However, on September 28, 2011, Plaintiff received yet another unsolicited SPAM text message from the same 663-33 number that stated:

> "MTV: An all-new season of the 'Real World' starts tonight at 10/9c! See the trailer: http://mm.mtv.com/r4oeTt." [A true and correct copy of said September 28, 2011 text message is attached as Exhibit C].

25. Once again, Plaintiff sent another text message to Defendant saying "STOP" in order to end the unsolicited messages. [See Exhibit C].

26. Similarly, Defendant sent a confirmatory text message to Plaintiff stating:

> "MTV: Sorry to see you go. You will receive no more messages or charges from MTV. For more info reply HELP, call 866-375-2127, or email textalerts@mtv.com." [See Exhibit C].

27. Defendant utilized an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) using text messages sent to Plaintiff's cellular telephone as prohibited by 47 U.S.C. § 227(b)(1)(A)(iii) in order to attempt to solicit business from Plaintiff.

28. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

29. The telephone number Defendant called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls and texts pursuant to 47 U.S.C. § 227(b)(1).

30. These telephone communications constituted communications that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

31. These text messages constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

32. These telephone communications constituted communications that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

33. Plaintiff did not provide prior express consent to receive calls or messages on Plaintiff's cellular telephones, pursuant to 47 U.S.C. § 227 (b)(1)(A).

34. These telephone communications by Defendant, or its agent, violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on behalf of herself and on behalf of and all others similarly situated ("the Class") and ("the Sub-Class").

36. Plaintiff represents, and is a member of, the Class, consisting of all persons within the United States who received any unsolicited text messages from Defendant which text message was not made for emergency purposes or with the recipient's prior express consent within the four years prior to the filing of this Complaint.

37. Plaintiff represents, and is a member of, the Sub-Class, consisting of all persons within the United States who received any unsolicited marketing text messages from Defendant which text message was not made for emergency purposes and made after the recipient had revoked the recipient's prior express consent to receive said unsolicited text messages within the four years prior to the filing of this Complaint.

38. Defendant and its employees or agents are excluded from the Class and the Sub-Class. Plaintiff does not know the number of members in the Class and the Sub-Class, but believes the Class and the Sub-Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

39. Plaintiff and members of the Class and the Sub-Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class and the Sub-Class members via their cellular telephones by using marketing and text messages, thereby causing Plaintiff and the Class and the Sub-Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class and the Sub-Class members previously paid, and invading the privacy of said Plaintiff and the Class and the Sub-Class members. Plaintiff and the Class and the Sub-Class members were damaged thereby.

40. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and the Sub-Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class and the Sub-Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

41. The joinder of the Class and the Sub-Class members is impractical and the disposition of their claims in the Class and the Sub-Class action will provide substantial benefits both to the parties and to the court. The Class and the Sub-Class can be identified through Defendant's records or Defendant's agents' records.

42. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law

and fact to the Class and the Sub-Class predominate over questions which may affect individual Class members, including the following:

a) Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any text messages to any Class member (other than a message made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system to any telephone number assigned to a cellular phone service;

b) Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any text messages to any Sub-Class member (other than a message made for emergency purposes) after said Sub-Class member had revoked their prior express consent to receive such text messages using any automatic dialing system to any telephone number assigned to a cellular phone service;

c) Whether Plaintiff and the Class and the Sub-Class members were damaged thereby, and the extent of damages for such violation; and

d) Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

43. As persons that received at least one marketing and text message without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the Class and the Sub-Class. Plaintiff will fairly and adequately represent and protect the interests of the Class and the Sub-Class in that Plaintiff has no interests antagonistic to any member of the Class and the Sub-Class.

44. Plaintiff and the members of the Class and the Sub-Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class and the Sub-Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class

member's and Sub-Class member's claims, few, if any, Class and Sub-Class members could afford to seek legal redress for the wrongs complained of herein.

45. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

46. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and law. The interest of Class and Sub-Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

47. Defendant has acted on grounds generally applicable to the Class and the Sub-Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class and the Sub-Class as a whole.

### FIRST CAUSE OF ACTION
### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227 ET SEQ.

48. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

50. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq, Plaintiff and The Class and the Sub-Class are entitled to an award of

$500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. Plaintiff and the Class and the Sub-Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. § 227 ET SEQ.

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

54. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq, Plaintiff and the Class and the Sub-Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

55. Plaintiff and the Class and the Sub-Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff, and the Class and the Sub-Class members the following relief against Defendant:

## FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION FOR KNOWING/WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

- As a result of Defendant's knowing/willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

### TRIAL BY JURY

56. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 13, 2013                                                    Respectfully submitted,

                                                                       **DAVIS, KESSLER & DAVIS**

                                                               By:  /s/ Norris A. Kessler, III
                                                                       NORRIS A. KESSLER, III, ESQ.
                                                                       ATTORNEY FOR PLAINTIFF

///

///

///

[ADDITIONAL COUNSEL FOR PLAINTIFF]

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
*Pro Hac Vice*
josh@westcoastlitigation.com
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

KAZEROUNI LAW GROUP, APC
2700 N. Main Street, Ste. 1000
Santa Ana, California 92705

PROOF OF SERVICE

Text Message
Aug 28, 2011 8:58 PM



Verizon & MTV thank you for voting! Watch the VMAs to see who wins! STOP2quit/HELP4info. Msg&Data Rates May Apply.

Sep 15, 2011 7:29 PM

MTV: 'Jersey Shore' sneak peek of tonight's episode - why is Snooki lying in a bush? Watch: http://mm.mtv.com/nrlU2T *LG Txtr Game- Txt Win to 28683 to Play




PLAINTIFF'S EXHIBIT A

Sep 24, 2011 5:44 PM

MTV: 'Real World San Diego' premieres Wednesday, Sept 28 at 10/9c! Get to know the cast here http://mm.mtv.com/pFh1UF

Sep 24, 2011 6:37 PM

STOP

MTV: Sorry to see you go. You will receive no more messages or charges from MTV. For more info reply HELP, call 866-375-2127, or email textalerts@mtv.com.

PLAINTIFF'S EXHIBIT B

or email textalerts@mtv.com.

Sep 28, 2011 6:44 PM

MTV: An all-new season of the 'Real World' starts tonight at 10/9c! See the trailer: http://mm.mtv.com/r4oeTt



STOP

MTV: Sorry to see you go. You will receive no more messages or charges from MTV. For more info reply HELP, call 866-375-2127, or email textalerts@mtv.com.





PLAINTIFF'S EXHIBIT C